1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MICHAEL JOSEPH MULDER,  )
                        )
        Petitioner,     )       3:09-CV-00610-PMP-WGC
                        )
vs.                     )
                        )       **ORDER**
RENEE BAKER, *et al.*,  )
                        )
        Respondents.    )
                        )
_____/

On May 1, 2013, this court entered an order denying petitioner Mulder's request for a temporary stay pursuant to *Ryan v. Gonzales*, 133 S.Ct. 696 (2013).  ECF No. 92.  In doing so, the court concluded that "there is very little, if any, likelihood that petitioner will regain competence in the foreseeable future," so "a stay of proceedings due to petitioner's lack of competence is no longer appropriate." *Id.* (citing *Gonzales*, 133 S.Ct. at 709).  Arguing that there is a reasonable probability that he can be restored to competence in the foreseeable future and that the State has an obligation to assist in that effort, Mulder has filed a motion asking the court to reconsider its decision to deny a temporary stay.  ECF No. 96.

A district court may rescind, reconsider, or amend a previous order pursuant to its inherent power to modify interlocutory orders before entry of final judgment. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886-87 (9th Cir. 2001).  That power is derived from

the common law, not from the Federal Rules of Civil Procedure. *Id*. Thus, the respondents' various arguments grounded in the Federal Rules are unavailing. Even so, the court has considered Mulder's arguments in support of reconsideration and, for reasons set forth below, has found that none of them warrants modification of the May 1, 2013, order.

On September 26, 2011, this court granted petitioner's motion to stay federal habeas corpus proceedings pursuant to *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003), a case that required a court to stay capital habeas proceedings upon a showing that the petitioner is incompetent. ECF No. 74. The order that Mulder asks this court to reconsider was issued after the court of appeals vacated the stay order and remanded the case for further consideration in light of *Gonzales*. ECF No. 86.

The Court in *Gonzales* severely restricted, but did not entirely eliminate, a petitioner's ability to obtain an incompetency stay. Having consolidated the case with an appeal out of the Sixth Circuit, the Supreme Court addressed whether the Ninth and Sixth Circuits erred when they found 18 U.S.C. § 3599(a)(2) (Ninth Circuit) and 18 U.S.C. § 4241 (Sixth Circuit) entitled a capital inmate to stay his federal habeas proceedings if he was not competent to assist counsel. *Gonzales*, 133 S. Ct. at 701-02, 706 n.9. Although it concluded that neither statute gave rise to such a right, the Court recognized that district courts retain the equitable power to stay proceedings when they determine that habeas petitioners are mentally incompetent. *Id*. at 707-08.

The Court found it "unnecessary to determine the precise contours of the district court's discretion to issue stays" and, instead, "address[ed] only its outer limits." *Id*. at 708. In this regard, the Court noted that "a stay is not generally warranted when a petitioner raises only record-based claims subject to 28 U.S.C. § 2254(d)" – i.e., claims already adjudicated on the merits in state court. *Id*. If a district court concludes, however, that the petitioner's claim "could substantially benefit from the petitioner's assistance":

> [T]he district court should take into account the likelihood that the petitioner will regain competence in the foreseeable future. Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment.

1   *Id*. at 709.  So, even if Mulder's petition contains claims that could substantially benefit from his

2   assistance, he is eligible for a stay only if there is at least a reasonable hope that he will regain

3   competence in the foreseeable future.

4         Mulder's argument in favor of reconsideration is that such a reasonable hope exists *if* the

5   State provides appropriate therapy.  To support this argument, Mulder proffers the opinions of three

6   purported mental health experts – Thomas Kinsora, Ph.D.; Jethro W. Toomer, Ph.D.; and Jonathan

7   Mack, Psy.D.  He has also submitted numerous journal articles regarding the treatment and

8   rehabilitation of aphasia, memory, and other impairments relevant to Mulder.

9         As recounted in the order granting Mulder a *Rohan* stay, Dr. Kinsora examined Mulder at the

10   Nevada State Prison in May 2003 at the request of Mulder's state post-conviction counsel.  ECF No.

11   74, p. 4-5.  In the report stemming from that evaluation, Kinsora opined that Mulder was not able to

12   assist counsel, noting, among other things, that Mulder is severely impaired in his ability to

13   understand what is being said by his attorneys and what is being said in court.  *Id*.  After evaluating

14   Mulder in July of 2013, however, Kinsora states that he has "little doubt that with some regular

15   intervention, [Mulder] can eventually be brought to adequate competency for the current matter of

16   the habeas corpus petition."  ECF No. 96-2, p. 66.

17         Dr. Toomer a forensic psychologist, examined and tested Mulder in December 2009 and

18   testified at the evidentiary hearing on Mulder's request for a *Rohan* stay.  At the hearing, Dr. Toomer

19   testified that Mulder's ability to reason and communicate was limited to a very basic, concrete level.

20   ECF No. 74, p. 17.  In a letter to Mulder's counsel dated April 30, 2013, Dr. Toomer states that

21   "[r]ehabilitative and restorative therapies and intervention are available to assist individuals like

22   Mr. Mulder" and that "Mr. Mulder would be amenable to such intervention and there is reasonable

23   hope that restoration of competency is likely in the foreseeable future for him."  ECF No. 96-2, p.

24         Dr. Mack, a neuropsychologist, tested and interviewed Mulder at Ely State Prison in

25   November 2010, but his report submitted herein is dated July 29, 2013.  *Id*., p. 6-62.  In that report,

26   he opines that severe dementia and aphasia render Mulder unable to assist counsel, but that, with the

1   right medication and therapy, Mulder could be restored to competence within twelve months. *Id*.

2   This court has numerous concerns about Mulder's claim that he stands a reasonable chance of

3   regaining competence if the State provides the appropriate corrective measures.  To begin with, it

4   stands in stark contrast with Mulder's position in seeking a *Rohan* stay.  In a brief filed prior to the

5   evidentiary hearing, Mulder claimed that he had incurred "irreversible brain damage" and that

6   various experts would testify that he was "extremely impaired."  ECF No. 53.  When asked about

7   Mulder's prognosis at the evidentiary hearing, Dr. Toomer stated as follows:

8   . . . I believe, that given what has transpired, he's probably maximized in terms
    of how far he will achieve, or how far he will grow from this particular point. I think
9   there will be some pockets of improvement. For instance, small signs of
    improvement. But in terms of any significant progression, you won't see that.
10

11  ECF No. 68, p. 137.

12  The evidentiary hearing testimony of Dr. Julie B. Kessel, M.D., a psychiatrist retained by

13  Mulder's counsel, includes the following exchange between Kessel and counsel:

14  Q  What is [Mulder's] prognosis?

15  A  Well, prognosis refers to what is his ability to show, demonstrate any improvement of his
    cognitive function, or his medical condition, depending if we're talking about his prognosis
16  for his medical condition or his cognitive function.  So, do you want me to address both of
    those?
17

18  Q  Yes, if you could.

19  A  Okay. With regard to -- when somebody has a stroke of this nature, you can see some
    recovery in the first, let's say, maybe out to 2, 3, years recovery is, uh, enhanced with
20  immediate and intensive rehabilitation.  So there are different kinds of rehabilitation.  There's
    physical rehabilitation, and there's something called cognitive rehabilitation.  Those things
21  need to start immediately, post-stroke.  Whether they start post-stroke or not, your recovery is
    pretty much maximized at two, three years.  You may, you may have some improvement,
22  slight improvement for longer than that, but pretty much out at two to three years is probably
    where you're going to land.  That's with or without cognitive or physical rehabilitation
23  because, as the brain is recovering, that's the time to do the rehabilitative activities.  After the
    brain has settled, it's -- well, it's -- it's nearly impossible to make substantial improvements
24  after that.  Now, with regard to his physical condition, without continued -- without some
    kind of intervention for his physical condition, things like the contracture in his wrist may
25  continue to get worst and he may actually break bones in his wrist.  So there's some concern
    about his prognosis for his medical condition.  He's at risk to develop blood clots in his legs
26  because of his paralysis and in his arm, et cetera.  With regard to his, uh, cognitive capacity,
    he's maxed out at his level of improvement.  It doesn't matter if we provide cognitive
    rehabilitation at this point, his prognosis is what we call guarded; meaning, there's virtually

4

1      no opportunity for further improvement.  This is his new baseline.

2      Q  So –

3      THE COURT:  It's as good as it gets?

4      THE WITNESS:  It's as good as it gets.

5      BY [MULDER'S COUNSEL]:

6      Q  So when he says –

7      A  In medical terms, he's at maximal medical improvement.

8      Q  All right.  Is his dementia reversible?

9      A  No, his -- and, again, it's all kind of part of that, if -- I could have substituted dementia for
       cognitive impairments as I was just talking a few moments ago.  No, the dementia is a result
10     of that dramatic stroke, and his recovery is what it is.  Now as he ages, of course, he's
       susceptible to all of the emergence of new and, you know, chronic medical conditions that
11     we're all subject to as we age, which will aggravate those cognitive issues that he has.  He's
       also at risk for medical complications to the, uh, to the fact that he can't -- he's not using his
12     arm or leg very much.  So what happens in those situations is he is susceptible to the
       development of a blood clot.  If he develops a blood clot, things could get worse for him
13     because blood clots can travel.  So he has some potential demise as he ages, but he doesn't
       have the opportunity for rehabilitation at this point in his mental state or, substantively, in his
14     physical condition.

15     Q  So his situation could get worse, but it can't get better?

16     A  That's right. Yes.

17     Q  And his -- so the same thing would apply to your diagnosis of the three different types of
       aphasia that he suffers from as well?
18
       A  Yes. They're maximally, medically improved.
19
       Q  And organic personality disorder –
20
       A  Yes.  On the very positive side, sometimes we see this. It's nice when you do see it. But on
21     the very positive side, he's had a favorable personality change as a result of this stroke and,
       therefore, his life is more tolerable to him than it may otherwise be.
22
       Q  So, reasonably, he'll stay like this. He'll be this nice happy guy –
23
       A  Yes.
24
       Q  -- who doesn't mind -- gets along with everybody?
25
       A  Yes.
26
       Q  Could anything have been done for Mr. Mulder post-stroke?

                                                        5

1   A  Well, the standard of care would have been to get physical rehabilitative therapy for his
2   physical condition, speech therapy for his speech condition, cognitive rehabilitation for
    speech, and his, uh, ability to manipulate concepts and formulate ideas.  Cognitive
3   rehabilitation is not an incredibly effective intervention, but it's a standard of care that applies
    to it because of the small increments that it can do; that it can have in some people.  So it
    would have been standard.  It may have been useful.  It would not have been dramatically
4   useful, but it may have been a little bit useful.  Hard to say.  Likely would not have impacted
    his cognitive function a great deal, but may have a little.  His physical condition could be a
5   bit better.  He does not -- the chances are, are very good that physical rehabilitation may have
    abbreviated the degree to which his right arm is contracted, and improved the function that he
6   has on the right side of his body.

7   ECF No. 69, p. 63-67.

8       When asked by the court whether there may have been particular interventions that would

9   have been productive in terms of restoring Mulder's cognitive function, Kessel replied:

10      Uh, the chances are, uh, slim that they would have resulted in significant
        improvements in his cognitive function.  They're unlikely.  We do them anyway.  It's
11      standard of care.  We do them.  There are, uh -- there are much better studies to show
        improved outcomes in ability to express speech.  So, you're trained in moving the
12      muscles of your larynx to make words come out properly, and he would have
        benefitted from that.  And we're pretty good at doing that post-stroke.  But improving
13      that aphasia, not the disarthria, the motor problem he has with speech, but improving
        the concept formation, we're not very good at doing that.

14

15  *Id.*, p. 68-69.

16      Mulder has made little, if any, effort to explain the apparent inconsistency between Dr.

17  Toomer's testimony at the evidentiary hearing and the opinion he expresses in his letter of April 30,

18  2013.  With respect to Dr. Kessel, Mulder now seeks to downplay her testimony by contending that

19  she is "a psychiatrist whose practice is limited to evaluations," whereas Drs. Kinsora and Mack are

20  "engaged in the day-to-day clinical practice of cognitive rehabilitation on dementia and traumatic

21  brain injury patients."  ECF No. 105, p. 13.  This contention lacks heft, however, given the extent to

22  which Mulder's counsel elicited testimony from Dr. Kessel on subject of Mulder's prognosis.

23      In addition, the opinions of Dr. Mack and Dr. Kinsora with respect to Mulder's amenability

24  to rehabilitation are too pat to be given much credence.  Dr. Mack's opinion based on his November

25  2010 evaluation is that Mulder has "severe dementia," "extreme short-term memory loss," and "very

26  severe expressive aphasia," and that Mulder's "ability to comprehend spoken language is extremely

6

1    impaired," and his "reading comprehension is markedly impaired." Yet, even though he has

2    apparently not had any subsequent contact with Mulder, Dr. Mack, in his July 2013 report, outlines a

3    fairly specific course of treatment for Mulder and claims that he is reasonably certain that the

4    treatment will likely restore Mulder to competence within twelve months. ECF No. 96-2, p. 61-62.

5             In his July 2013 report, Dr. Kinsora states that, since his prior assessment in 2003, Mulder's

6    cognitive functioning, comprehension skills, memory, and aphasia have improved to the point that

7    Mulder is "likely competent at this time to assist counsel" with some legal matters, but "not quite

8    ready to assist counsel" with other legal matters. ECF No. 96-2, p. 64-66. Like Dr. Mack, Dr.

9    Kinsora predicts that, with therapeutic intervention, Mulder will be restored to competence in

10   approximately one year. Considered together, the two reports seem to indicate that Mulder was

11   severely impaired in several respects until at least November 2010, improved remarkably between

12   then and July of 2013 despite receiving no formal therapy, and now just needs a year of treatment to

13   be competent again. While perhaps possible, this scenario seems implausible and conveniently

14   tailored to the requirements for a temporary stay set forth in *Gonzales*.

15            Moreover, even if his claims about the amenability of his condition to rehabilitation are

16   accurate, Mulder has not established that the State has a legal obligation to provide the recommended

17   treatment or, more to the point, that a federal court in a habeas proceeding has the authority to

18   mandate it. The exclusive purpose of this action is for Mulder to seek relief "on the ground that he is

19   in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §

20   2254(a). If the State's conduct amounts to deliberate indifference to Mulder's medical needs, as he

21   claims, his recourse is through an action brought under 42 U.S.C. § 1983. *See Toguchi v. Chung*,

22   391 F.3d 1051, 1057 (9th Cir. 2004).

23            As noted by the Court in *Gonzales*, "the decision to grant a stay, like the decision to grant an

24   evidentiary hearing, is 'generally left to the sound discretion of district courts.'" *Gonzales*, 133 S.Ct.

25   at 708 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In addition, any stay this court

26

1  grants should be compatible with the goals of AEDPA,[1] including the goal of reducing delays in

2  capital cases. *Id*. at 709.  In light of length of the prior stay in this case, the time has come for the

3  State to be allowed to defend its judgment of conviction.  Accordingly, the court declines to

4  reconsider its decision to deny Mulder's request for a temporary stay.

5      **IT IS THEREFORE ORDERED** that petitioner's motion for reconsideration (ECF No. 96)

6  is DENIED.

7      **IT IS FURTHER ORDERED** that petitioner's response to the respondents' motion to

8  dismiss (ECF No. 99) shall be due **thirty (30) days** from the date of this order.

9      DATED:  October 23, 2013

10

11

12  _____
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

[1]  The Antiterrorism and Effective Death Penalty Act of 1996.

8