# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL JOSEPH MULDER, | |
| Petitioner, | 3:09-CV-00610-PMP-WGC |
| vs. | |
| RENEE BAKER, *et al.*, | **ORDER** |
| Respondents. | |

Petitioner Mulder is a Nevada prisoner sentenced to death in 1998 by a jury sitting in the Eighth Judicial District Court for Nevada. Before the court in this federal habeas action are two motions filed by the Mulder – a motion for summary judgment (ECF No. 116) and a motion for stay and abeyance (ECF No. 117).

*Relevant procedural history*

On September 26, 2011, this federal habeas action was stayed, pursuant to *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003), pending restoration of Mulder's competency. The United States Court of Appeals for the Ninth Circuit Court vacated that order and remanded the case for reconsideration in light of *Ryan v. Gonzales*, 133 S.Ct. 696 (2013). On May 5, 2013, having determined that Mulder is not entitled to a stay under *Gonzales*, the court directed the respondents to file a response to Mulder's amended petition for writ of habeas corpus on or before August 1, 2013.

The same order also allowed Mulder to move for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), any time prior to (or on) that date.

On July 29, 2013, Mulder filed a motion for reconsideration of this court's order lifting the competency stay and moved for an extension of time within which to file a motion for stay and abeyance under *Rhines*.  The court granted the request, but noted that it "took dim view of the potential delay that may result."  ECF No. 98.  On August 1, 2013, respondents complied with the court's scheduling order by filing a motion to dismiss claims in Mulder's amended petition.

On October 23, 2013, this court entered an order denying Mulder's motion for reconsideration and directing him to file a response to the respondents' motion to dismiss by November 22, 2013.  On November 7, 2013, Mulder filed a motion for permission to appeal the denial of his motion for reconsideration.  When that motion was denied, Mulder filed a petition for a writ of mandamus in the Ninth Circuit Court of Appeals, which was also denied.  After seeking several extensions of time, Mulder filed, on January 10, 2014, the motions now pending before the court.  The court granted Mulder's request to extend the deadline for his response to the motion to dismiss pending the court's resolution of those motions.

*Motion for summary judgment*

Mulder moves the court for summary judgment on Claim One of his amended petition – a claim in which he alleges that his Eighth Amendment right to a reliable sentence was violated when the Nevada Supreme Court failed to provide close appellate scrutiny of his death sentence after invalidating two aggravating circumstances.  Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 12 of the Rules Governing Proceedings in the United States District Courts under 28 U.S.C. § 2254 provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."

The last Supreme Court decision to condone the use of summary judgment in habeas proceedings – *Blackledge v. Allison*, 431 U.S. 63, 80–81 (1977) – was issued before the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") significantly limited the scope of federal habeas corpus review of state court criminal convictions. Since the passage of AEDPA, at least one federal court of appeals has held that the potential conflict between the requirement, under Fed. R. Civ. P. 56, that courts draw all factual inferences in the nonmovant's favor and the AEDPA provision codified at 28 U.S.C. § 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – can be accommodated by allowing the latter to override the former. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir.2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

Even so, the primary purpose behind summary judgment as a procedural device is to prevent the need for trial over facts that are not legitimately in dispute. *See* Advisory Committee Notes, Fed. R. Civ. P. 56, 1963 Amendment ("The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). Indeed, the Court's discussion of summary judgment in *Blackledge* was in the context of explaining how a habeas proceeding may be resolved in favor of the state without need for an evidentiary hearing even when a habeas petitioner has presented a "set of allegations not on its face without merit." *Blackledge*, 431 U.S. at 80-81. Since the passage of AEDPA, however, a habeas petitioner is rarely entitled to an evidentiary hearing in any case. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1411 (2011). Thus, whatever beneficial role summary judgment may have played in habeas proceedings prior to AEDPA is now virtually non-existent.

As a practical matter, this court's analysis of the merits of Claim One in the context of Mulder's summary judgment motion would likely be no different from the analysis the court will employ when it considers Mulder's complete petition. If Claim One were to be denied on the merits now, the court would still be required to adjudicate the remainder of Mulder's petition. On the other hand, if the court were grant relief on the claim, the State would almost certainly appeal, which

gives rise to the prospect of even lengthier proceedings should the that decision be eventually reversed.

In light of the foregoing, the court concludes that a motion for summary judgment will not significantly advance the resolution of these proceedings. The motion shall be denied.

*Motion for stay and abeyance*

Conceding that his amended petition contains claims that have not been exhausted in state court, Mulder asks this court to stay the proceedings herein and hold them in abeyance pending state court exhaustion of his unexhausted claims. In *Rhines v. Weber*, 544 U.S. 269 (2005), the stay and abeyance procedure was condoned by the Court as a means by which a habeas petitioner with a mixed petition subject to dismissal under *Rose v. Lundy*, 455 U.S. 509 (1982), could fully exhaust his petition without the risk of running afoul of the 1-year statutory time limit for filing federal petitions. *Rhines*, 544 U.S. at 276.

The Court in *Rhines* cautioned, however, that stay and abeyance, if too frequently used, would undermine AEDPA's goals of prompt resolution of claims and deference to state court rulings. *Id*. Thus, the Court held that, in order to obtain "stay and abeyance," a petitioner must show: 1) good cause for the failure to exhaust claims in state court; 2) that unexhausted claims are potentially meritorious; and 3) the absence of abusive tactics or intentional delay. *Id*.; *Jackson v. Roe*, 425 F.3d 654, 662 (9th Cir. 2005).

As a threshold matter, the respondents argue that a *Rhines* stay is not appropriate here because *none* of the claims in Mulder's amended petition are exhausted. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (declining to extend *Rhines* "to the situation where the original habeas petition contained only unexhausted claims, but the record shows that there were exhausted claims that could have been included."). At a minimum, however, Claim One is exhausted because Mulder has agreed to abandon the aspects of the claim that, according to respondents, render it unexhausted. ECF No. 141, p. 7. In addition, Claims Two and Fourteen are also exhausted. Thus, Mulder has presented a mixed petition for the purposes of *Rhines*. The question, then, is whether

Mulder can satisfy the requirements for stay and abeyance set forth above.

Neither *Rhines* nor any Supreme Court case since *Rhines* goes into detail as to what constitutes good cause for failure to exhaust. On the one hand, the Ninth Circuit has held that interpreting "good cause" too broadly militates against the Supreme Court's admonition that stay and abeyance should only be available in "limited circumstances." *See Wooten v. Kirkland* 540 F.3d 1019, 1024 (9th Cir. 2008) (quoting *Rhines*, 544 U.S. at 277). On the other hand, the Ninth Circuit concluded in a more recent case that the standard cannot be any more demanding than the showing needed for "cause" to excuse a procedural default. *Blake v. Baker*, 745 F.3d 977, 984 (9th Cir. 2014). The court in *Blake* held that "good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify [the failure to exhaust a claim in state court]." *Id*. at 982.

Having concluded that petitioner's allegations of ineffective assistance of counsel ("IAC") by state post-conviction counsel amounted to good cause, the court in *Blake* noted that its holding was "consistent with and supported by the Supreme Court's recent opinion in *Martinez v. Ryan*, ––– U.S. ––––, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), in which it established a limited exception to the rule of *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that IAC by state post-conviction counsel 'at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.'" *Blake*, 745 F.3d at 983 (quoting *Martinez*, 132 S.Ct. at 1315). The *Blake* court reasoned that the required showing cannot be any more demanding than that necessary to excuse procedural default and noted, in a footnote, that the Supreme Court suggested a more lenient standard in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), by indicating that a petitioner's "reasonable confusion" about the timeliness of his federal petition would generally constitute good cause for his failure to exhaust state remedies before filing his federal petition. *Id*. at 983-84, n.7.

With respect to the "potentially meritorious" inquiry, the standard should approximate the standard that applies when the court decides whether to deny an unexhausted claim under 28 U.S.C.

5

§ 2254(b)(2). *See Rhines*, 544 U.S. at 277.  In both instances, the objective is to preserve the principle of comity while preventing the waste of state and federal resources that occurs when a petitioner is sent back to state court to litigate a clearly hopeless claim. *Cf. Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).  Thus, a petitioner should not be prevented from returning to state court unless "it is perfectly clear that [he] does not raise even a colorable federal claim." *Id*.

Mulder offers several reasons for not exhausting his unexhausted claims in state court, including uncertainty as to how the Nevada Supreme Court will treat his unexhausted claims, his mental impairments, and ineffective assistance of post-conviction counsel.  He further claims that good cause exists because the State of Nevada withheld information that prevented him exhausting his challenge to the state's lethal injection procedure and because his state post-conviction counsel failed to raise an Eighth Amendment challenge to the execution of an individual with Mulder's mental and physical impairments – i.e., dementia, functional mental retardation, aphasia, personality change, and hemiparesis.

As to uncertainty regarding Nevada Supreme Court's treatment of his claims, Mulder conflates good cause for a stay with good cause for failure to exhaust.  That is, the possibility that the Nevada Supreme Court will consider his unexhausted claims on the merits does not speak to whether he had a "reasonable excuse" for failing to exhaust those claims before now, which is what *Rhines* requires. *See Blake*, 745 F.3d at 981 (interpreting both *Rhines* and *Pace* to require showings of good cause for failure to exhaust).

Likewise, neither the State's alleged non-disclosure of information related to lethal injection nor post-conviction counsel's failure to challenge the execution of individuals with Mulder's impairments constitute good cause for failure to exhaust.  Constitutional challenges to execution by lethal injection were common long before the April 2006 release of Nevada's lethal injection protocols. *See*, *e.g.*, *Poland v. Stewart*, 169 F.3d 573, 590 (9th Cir. 1999); *see also Williams v. Stewart*, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam) (finding lethal injection claim procedurally defaulted where Arizona prisoner failed to seek evidence after introduction of lethal

6

injection as mode of execution in 1992 but before filing a post-conviction petition in 1994).

Mulder also argues that he has good cause because more recent developments related to Nevada's execution facilities make it impossible for Nevada "to execute a sentence of death against him at all." ECF No. 117, p. 21. That claim is not, however, contained in his pending federal petition. Because it is not clear, at this point, that Mulder will be permitted to amend his petition again, the court is not inclined to grant a stay for him to exhaust a claim that is not currently before the court. The same goes for his proposed claim that his various impairments render him constitutionally ineligible for the death penalty.

Mulder's mental illness and alleged ineffective assistance of post-conviction counsel are more convincing reasons for failing to exhaust currently unexhausted claims. Mulder suffered a stroke in prison on March 15, 2001, prior to the filing of his first counseled state petition for post-conviction relief. The residual impairments caused by that stroke served as the basis for this court issuing the *Rohan* stay. In concluding that a *Rohan* stay was warranted, this court found that "Mulder's impairments allow him to convey only the most basic and selective information about what occurred during his trial, what interactions he may have had with trial counsel, or what evidence from his background counsel should have introduced in mitigation." ECF No. 74, p. 31-32.

As for receiving ineffective assistance from state post-conviction counsel, Mulder focuses on counsel's failure to exhaust Claim Three and Twelve of his amended petition, which are premised, to a large extent, on allegations that Mulder's trial counsel provided ineffective assistance of counsel by failing to investigate and present available mitigating evidence and to rebut the State's evidence in aggravation in the penalty phase of Mulder's trial.

In *Blake*, the court held that stay and abeyance was warranted because Blake's ineffective assistance of post-conviction claim was "supported by evidence that his state post-conviction counsel failed to discover, investigate, and present to the state courts the readily available evidence of Blake's abusive upbringing and compromised mental condition." *Blake*, 745 F.3d at 983. Mulder

has supported his state post-conviction IAC claim with similar evidence. For example, he has presented the declarations of his siblings, Craig and Lisa Mulder, both of whom testified for the State in the guilt phase of Mulder's trial, but were not called by the defense in the penalty phase. Those declarations describe how Mulder's parents subjected their children to emotional and physical abuse and how five of the six children developed drug and/or alcohol addictions as teenagers. In addition, Mulder has presented evidence of multi-generational substance abuse in his family and contends that testimony from an addiction specialist would have significantly benefitted his case for mitigation.

Respondents argue that Mulder's allegation of ineffective assistance of post-conviction counsel is not grounds for a stay because his underlying trial IAC claims are without merit. To support their argument, they cite to efforts trial counsel made to develop mitigating evidence and to the evidence that counsel was able to present regarding Mulder's family background and drug abuse. While this may serve to distinguish this case from *Blake*,[1] the court's task here is not to definitively determine whether Mulder received ineffective assistance of counsel at trial. Instead, the court must decided whether Mulder has advanced a reasonable excuse supported by sufficient evidence to justify the failure to exhaust his claims in state court.

Viewed in isolation, the allegedly deficient performance of Mulder's state post-conviction counsel presents a borderline case for good cause under *Rhines*. When that factor is combined with the impairments Mulder suffered as a result of the March 2001 stroke, however, the inescapable conclusion is that Mulder has a reasonable excuse, supported by evidence, for not exhausting his claims. In addition, the trial IAC claims discussed above are potentially meritorious for the purposes of *Rhines*. In this regard, this court notes that the state district court set aside Mulder's death sentence upon finding that the jury's consideration of two aggravating circumstances was

---

[1] The allegation in *Blake* was that trial counsel presented no evidence of "Blake's abusive upbringing and history of mental illness," and that the jury heard only "'that he was a happy, talented, good, generous and encouraging person who had good times growing up and loved God but had made a huge mistake; and that family members would benefit by continued communication with him.'" *Blake*, 745 F.3d at 979, n.2.

1  prejudicial error. Accordingly, there is at least some chance that the additional mitigating evidence
2  would have changed the outcome of Mulder's state proceedings.

3  Lastly, respondents argue that Mulder has acted in a dilatory manner because *Duncan v.*
4  *Walker*, 533 U.S. 167 (2001), placed him on notice that the filing of a federal petition does not toll
5  the running of the federal limitation period as to the later assertion of claims; that he has nonetheless
6  made no effort to exhaust his claims; and that, because the rationale behind *Rhines* is to somewhat
7  soften the effects of *Duncan*, granting a stay in this action would undermine the rationale of *Rhines*
8  and reward Mulder for his inaction. Be that as it may, the primary cause for delay in this case has
9  been extended litigation over Mulder's good faith attempts to stay proceedings due to his mental
10 state (first under *Rohan*, then under *Gonzales*). The record does not establish that Mulder has
11 engaged "intentionally dilatory litigation tactics," which is the relevant inquiry under *Rhines*.
12 *Rhines*, 544 U.S. at 278.

13 Having met the requirements under *Rhines*, Mulder has shown that a stay is warranted to
14 allow him to exhaust state court remedies before moving forward with this federal habeas action.

15 The court will stay this case. This will be the last time that the court imposes a stay to
16 facilitate Mulder's exhaustion of claims in state court. Mulder must exhaust all of his unexhausted
17 claims in state court during the stay of this action imposed pursuant to this order. The court does not
18 here make a ruling, or suggest any opinion, with respect to whether Mulder can make the showing
19 necessary to excuse any procedural default, or any limitations bar, that might exist as a result of his
20 delay in discovering and pleading his unexhausted claims.

21 **IT IS THEREFORE ORDERED** that petitioner's motion for summary judgment (ECF No.
22 116) is DENIED without prejudice. Petitioner's motion for stay and abeyance (ECF No. 117) is
23 GRANTED. This action is STAYED, while petitioner exhausts, in state court, all his unexhausted
24 claims for habeas corpus relief.

25 **IT IS FURTHER ORDERED** that, on or before December 15, 2014, petitioner shall file
26 and serve a status report, describing the status of his state-court proceedings. Thereafter, during the

1  stay of this action, petitioner shall file such a status report every 6 months (on or before June 15,
2  2015; December 15, 2015; June 15, 2016; etc.).  Respondents may, if necessary, file and serve a
3  response to any such status report within 15 days after its service.  If necessary, petitioner may reply
4  within 15 days of service of the response.

5  **IT IS FURTHER ORDERED** that petitioner shall have **30 days** from the date this order is
6  entered to initiate the appropriate state court proceeding, if he has not yet done so.  Following the
7  conclusion of state court proceedings, petitioner shall, within **30 days**, make a motion to lift the stay.

8  **IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a motion
9  by respondents if petitioner does not comply with the time limits in this order, or if he otherwise
10 fails to
11 proceed with diligence during the stay imposed pursuant to this order.

12 **IT IS FURTHER ORDERED** that respondents' motion to dismiss (ECF No. 99) is
13 DENIED, without prejudice, as moot.

14 DATED: September 8, 2014

17 _____
   UNITED STATES DISTRICT JUDGE