# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Michael J. Mulder, | Case No.: 3:09-cv-0610-JAD-WGC |
| Petitioner | |
| v. | **Order Granting in Part Motion to Dismiss Habeas Petition and Denying Motions for Discovery and an Evidentiary Hearing** |
| William Gittere, et al., | |
| Respondents | [ECF Nos. 174, 185, 187] |

Counseled federal habeas petitioner Michael J. Mulder is an inmate on Nevada's death row after having been convicted of the 1996 murder and robbery of an elderly man. Respondents move to dismiss several claims in Mulder's petition as untimely, unexhausted, procedurally defaulted, or not cognizable in federal habeas.[1]  Mulder opposes the motion,[2] seeks leave to conduct discovery,[3] and moves for an evidentiary hearing.[4]  After a thorough analysis of Mulder's claims, I grant the motion in part; dismiss Claims 2, 3(A), 3(C), 3(F)(1), 4, 7, 10, 11, 13, and 14 in their entirety; dismiss portions of Claims 5, 8, 9, and 12; and deny Mulder's motions as moot or premature.

---

[1] ECF No. 174.

[2] ECF No. 183.

[3] ECF No. 185.

[4] ECF No. 187.

**Background**[5]

In February 1998, a jury sitting in the Eighth Judicial District Court for Nevada returned verdicts finding Michael Mulder guilty of (1) first degree murder, (2) robbery of a victim 65 years of age or older, and (3) burglary while in possession of a firearm.  After a penalty-phase hearing, Mulder was sentenced to death for the murder.  The jury found the following aggravating circumstances for the murder: (1) it was committed while Mulder was engaged in the commission of or an attempt to commit burglary, (2) the murder was committed while Mulder was engaged in the commission of or an attempt to commit robbery, and (3) Mulder had been previously convicted of two violent felonies.

Mulder timely appealed his conviction and sentence to the Nevada Supreme Court.  On January 18, 2000, the Nevada Supreme court affirmed his conviction in a published opinion.[6]  Mulder filed a petition for rehearing, which was denied, as was his petition for writ of certiorari to the United States Supreme Court.[7]

In January 2001, the state district court appointed Christopher R. Oram, Esq. as post-conviction counsel for Mulder.  In May 2001, Oram filed a petition for writ of habeas corpus in the state district court, followed in July 2001 with a supplement to the petition.  While that proceeding was pending, Oram also filed a motion to reverse the sentence of death due to a stroke that Mulder suffered in March 2001 at Ely State Prison.  The state district court ordered psychological testing and ultimately denied the motion in October 2004.

---

[5] This section is derived from the exhibits filed by the respondents (ECF Nos. 127–137, 175–176) and this court's own docket.

[6] *Mulder v. State*, 992 P.2d 845 (Nev. 2000).

[7] *Mulder v. Nevada*, 531 U.S. 843 (2000).

The following January, Oram moved to stay all habeas proceedings until Mulder was found competent to assist counsel.  The state district court held an evidentiary hearing in March 2005 and found Mulder competent to assist counsel and to proceed with the state habeas proceedings.  In February 2006, the court entered an order denying Mulder's ineffective assistance of counsel claims on the merits and procedurally barring his other claims but granting penalty phase relief based on the Nevada Supreme Court's opinion in *McConnell v. State*.[8]

Both the State and Mulder appealed.  In June 2009, the Nevada Supreme Court entered an order reversing the state district court's decision to grant relief under *McConnell* and affirming the lower court's decision to find Mulder competent and to otherwise deny relief. Mulder filed a petition for rehearing, which was denied in September 2009.

On October 15, 2009, Mulder's counsel filed a petition for writ of habeas corpus in this court, which initiated this proceeding.  The Federal Public Defender's office (FPD) was appointed to represent him and filed an amended petition in January 2010.  The following month, the FPD moved for a stay under *Rohan ex rel. Gates v. Woodford*,[9] which, at the time, required the court to stay capital habeas proceedings upon a showing that the petitioner is incompetent. After an evidentiary hearing, this court granted the motion in September 2011.  The respondents appealed and while that appeal was pending, the U.S. Supreme Court abrogated *Rohan* in *Ryan v. Gonzales*.[10]  As a result, the Ninth Circuit remanded this case for consideration under *Gonzales*.  Finding a stay no longer appropriate in light of *Gonzales*, this court directed respondents to file a response to Mulder's amended habeas petition.

---

[8] *McConnell v. State*, 102 P.3d 606 (Nev. 2004).

[9] *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003).

[10] *Ryan v. Gonzales*, 568 U.S. 57 (2013).

In the meantime, Mulder moved this court to reconsider its decision to lift the stay, which the court denied. Mulder's subsequent petition for a writ of mandamus challenging the denial in the Ninth Circuit was also denied.

In August 2013, respondents filed a motion to dismiss claims in Mulder's amended petition. Rather than respond to the motion, Mulder filed a motion for summary judgment on Claim 1 of his amended petition and a motion for stay and abeyance. This court denied the motion for summary judgment but granted the motion for stay under *Rhines v. Weber*.[11] The court also denied the motion to dismiss without prejudice as moot.

In December 2014, Mulder filed his second state habeas petition, which was then denied as procedurally barred. On appeal, the Nevada Supreme Court affirmed the lower court, finding the second state petition untimely filed under Nevada Revised Statute (NRS) § 34.726, second and successive under NRS § 34.810, and barred by laches under NRS § 34.800. Mulder's subsequent petition for writ of certiorari with the U.S. Supreme Court was denied on March 25, 2019.

In May 2019, this court granted Mulder's motion to reopen these proceedings and allowed him time to file a second-amended petition. He did so on August 15, 2019. That second-amended petition is the subject of respondents' current motion to dismiss.

## Discussion

**I.    Timeliness**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court.[12] That one-year period begins to run

---

[11] *Rhines v. Weber*, 544 U.S. 269 (2005).

[12] 28 U.S.C. § 2244(d)(1).

1   from the latest of four possible triggering dates, with the most common being the date on which

2   the petitioner's state court conviction became final (by either the conclusion of direct appellate

3   review or the expiration of time for seeking such review).[13]  Statutory tolling of the one-year

4   time limitation occurs while a "properly filed" state post-conviction proceeding or other

5   collateral review is pending.[14]

6       **A.    Relation back of new claims**

7       The Supreme Court's decision in *Mayle v. Felix* limits a habeas petitioner's ability to

8   have newly-added claims "relate back" to the filing of an earlier petition, making them timely

9   under 28 U.S.C. § 2244(d).[15]  A new claim will be timely only if it arises out of "the same

10  conduct, transaction[,] or occurrence" as a claim in the timely pleading.[16]  Such a claim does not

11  arise out of "the same conduct, transaction[,] or occurrence" as claims in the original petition

12  merely because it challenges the same trial, conviction, or sentence.[17]  Rather, new claims relate

13  back "only when" they "arise from the same core facts as the timely filed claims, and not when

14  the new claims depend upon events separate in 'both time and type' from the originally raised

15  episodes."[18]  The common core of operative facts must not be viewed at too high a level of

16  generality, and an "occurrence" will consist of each separate set of facts that supports a ground

17  for relief.[19]

---

[13] *Id.*

[14] 28 U.S.C. § 2244(d)(2).

[15] *Mayle v. Felix*, 545 U.S. 644 (2005).

[16] *Id.*

[17] *Id.* at 655–64.

[18] *Id.* at 657.

[19] *Id.* at 661.

1    "'[F]or all purposes,' including relation back, the original petition consists of the petition

2    itself and any 'written instrument[s]' that are exhibits to the petition," which may include a state

3    court brief or court decision.[20]   Determining "whether an amended petition relates back to an

4    original petition that relied on an appended written instrument to help set forth the facts on which

5    it based its claims" requires a two-step analysis.[21]   First, the court must "determine what claims

6    the amended petition alleges and what core facts underlie those claims."[22]   Second, "for each

7    claim in the amended petition," the court must examine "the body of the original petition and its

8    exhibits" to see whether the pleading set out or attempted to set out "a corresponding factual

9    episode," or "whether the claim is instead supported by facts that differ in both time and type"

10   from those in the original petition.[23]

11        **B.    Some of Mulder's new claims relate back, making them timely.**

12            Respondents concede that Mulder filed his initial petition and first-amended petition

13   (FAP) within the one-year filing period under 28 U.S.C. § 2244(d).   They focus instead on his

14   second-amended petition (SAP), filed long after the one-year period had elapsed.   They argue

15   that ground four, and portions of grounds three, five, seven, nine, and ten are new and do not

16   relate back to a timely petition, making them time-barred.[24]   Mulder does not dispute that his

17   SAP was filed beyond the one-year filing period under § 2244(d)(1)(A) but contends that his

18   claims are nonetheless timely because they relate back to timely filed claims.   And, for at least

19

20   ────────────────

     [20] *Ross v. Williams*, 950 F.3d 1160, 1167 (9th Cir. 2020) (quoting Fed. R. Civ. P. 10(c)).

21   [21] *Id*.

22   [22] *Id*.

23   [23] *Id*.

     [24] ECF No. 174 at 14–31.   Respondents initially asserted that part of Claim 2 is untimely but
     withdrew that argument in their reply.   ECF No. 199 at 15.

1  one claim, he argues that a different triggering date for the one-year period applies or he is

2  entitled to equitable tolling.

3

###### 1.   *Claim 3(A)—ineffective assistance of counsel based on delayed start of work*[25]

4

5  In Claim 3(A), Mulder alleges that he was deprived of effective assistance of counsel

6  because trial counsel waited five months after being appointed to meet with him or conduct any

7  investigation.[26]  Mulder argues that this claim relates back to allegations in his FAP about

8  systemic problems in the office of the Clark County Special Public Defender (CCSPD).[27]  But

9  the operative facts in Claim 3(A) are his trial counsel's failure to work on his case or meet with

10  him and how that prejudiced his case.  The FAP does not set out or attempt to set out a

11  corresponding factual episode.  So this claim does not relate back to a timely petition.

###### 2.   *Claim 3(B)—ineffective assistance due to institutional impediments*

12

13  In Claim 3(B), Mulder alleges that "institutional impediments within the CCSPD

14  prevented it from providing effective assistance of counsel in his case.[28]  A portion of the claim

15  (Claim 3(B)(1)) is premised on the office's alleged failure or inability to perform competent

16  mitigation investigation in capital cases.  Another portion (Claim 3(B)(2)) is based on allegations

17  that heavy caseloads in the office prevented counsel from effectively preparing for Mulder's

18

19

20

21  [25] Claim 3 consists of several ineffective assistance of counsel (IAC) claims based on alleged deficiencies in counsel's performance throughout Mulder's state criminal proceeding.

22  [26] ECF No. 165 at 49–54.

23  [27] ECF No. 183 at 18–19.

[28] ECF No. 165 at 54–69.

penalty hearing.  Both components of the claim share a common core of operative facts with Claim 3(I) in Mulder's FAP,[29] so Claim 3(B) relates back.

### 3. Claim 3(C)—ineffective assistance based on lack of continuity in presentation

In Claim 3(C), Mulder alleges that his lawyers were ineffective because they failed to coordinate their respective responsibilities, which resulted in a lack of continuity in the presentation of his defense.[30]  The claim recounts how the several different attorneys assigned to work on Mulder's case failed to coordinate their efforts and provided piecemeal representation. Claim 3(III) of the FAP alleges that counsel failed "to develop and implement a coherent trial strategy."[31]  That claim focuses primarily on defense counsel's lackluster attempt to discredit the testimony of Kimberly Van Heusen, Mulder's girlfriend and one of the State's primary witnesses, along with counsel's decision to then use Van Heusen as a defense witness in their penalty-phase case.  But Claim 3(C) does not even mention Van Heusen.  Mulder points out that various facts supporting Claim 3(C) were included in his FAP,[32] but the FAP does not set out or attempt to set out "a corresponding factual episode."[33]  Claim 3(C) therefore does not relate back.

---

[29] ECF No. 7 at 18–22.

[30] ECF No. 165 at 69–72.

[31] ECF No. 7 at 22–26.

[32] ECF No. 183 at 23.

[33] *See Ross*, 950 F.3d at 1167.

### 4.    *Claim 3(D)—ineffective assistance based on failure to investigate and present evidence.*

In Claim 3(D), Mulder alleges that his lawyers were ineffective by failing "to investigate and present readily available compelling mitigating evidence.[34] This claim shares a common core of operative facts with Claim 3(III) of Mulder's FAP,[35] so Claim 3(D) relates back.

### 5.    *Claim 3(E)—ineffective assistance based on addiction evidence*

In Claim 3(E), Mulder alleges that counsel were ineffective for failing "to adequately investigate and present evidence of addiction."[36] This claim consists of three components: (1) Mulder's family history of addiction, (2) Mulder's personal history of addiction, and (3) use of an addiction expert. Respondents argue that the second component does not relate back, but that part of the claim shares a common core of operative facts with Claims 3(III) and 12(A) of Mulder's FAP.[37] I find that the entirety of Claim 3(E) relates back.

### 6.    *Claim 3(F)—ineffective assistance related to future dangerousness*

In Claim 3(F), Mulder alleges that his lawyers were ineffective for failing "to rebut the state's arguments concerning future dangerousness and for failing to present mitigation evidence of Mulder's positive adjustment in a structured setting."[38] After citing several comments from the prosecutor's closing arguments, he alleges that effective counsel would have (1) investigated and presented records of his previous incarcerations and (2) presented testimony from an institutionalization expert. Nowhere in his FAP did Mulder fault counsel for not presenting

---

[34] ECF No. 165 at 73–98.

[35] ECF No. 7 at 26–43.

[36] ECF No. 165 at 98–113.

[37] ECF No. 7 at 26–43, 132–36.

[38] ECF No. 165 at 113–24.

9

1  evidence about his previous incarcerations.  Thus, that portion of the claim—Claim 3(F)(1)—

2  does not relate back, but the remainder of the claim relates back to Claim 12(B) of Mulder's

3  FAP.[39]

4

5  **7.     *Claim 4—constitutional invalidity of death sentence based on conditions of confinement***

6         In Claim 4, Mulder alleges that his death sentence is invalid under various constitutional

7  provisions "due to the conditions of his confinement which are based on his improper

8  classification status as a capital inmate, which has contributed to the prison's failure to

9  adequately care for his medical needs, and which poses the risk of imminent physical injury to

10  Mulder."[40]  Because the FAP does not set out or attempt to set out "a corresponding factual

11  episode,"[41] Claim 4 does not relate back.

12

13  **8.     *Claim 5—constitutional invalidity of sentence based on verdict form errors***

14         In Claim 5, Mulder alleges that his death sentence is invalid under various constitutional

15  guarantees "because the general verdict form that was given to the jury directed them to find that

16  the mitigation evidence was outweighed by the statutory aggravating circumstances, because the

17  jury was not given a verdict form in which to find that mitigation outweighed aggravation, and

18  because the verdict form did not permit the jury to find the presence of, and to designate the

19  weight to be given to, the mitigating factors found by individual jurors."[42]  Mulder presented an

20  IAC claim in his FAP based on counsel's alleged failure to object to the lack of special verdict

21  _____

22  [39] ECF No. 7 at 136–40.

   [40] ECF No. 165 at 126–44.

23  [41] *See Ross*, 950 F.3d at 1167.

   [42] ECF No. 165 at 145–49.

form that indicated the jury's findings on mitigating circumstances.[43]  Claim 5 shares a common core of operative facts with that claim and thus relates back.

### 9.    *Claim 7—prosecutorial misconduct*

In Claim 7, Mulder alleges numerous instances of prosecutorial misconduct, including improper argument and presentation of evidence and failure to comply with constitutional disclosure obligations.[44]  One such instance is the prosecutor's alleged failure to disclose material exculpatory and impeachment evidence concerning Kimberly Van Heusen.[45] Respondents argue that this claim, which is labeled Claim 7(F), is untimely.  Mulder responds that the claim is timely under either the triggering date established by § 2244(d)(1)(D) or the equitable-tolling doctrine.[46]

Section 2244(d)(1)(D) triggers the one-year statutory period on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."[47]  A petitioner seeking the benefits of equitable tolling bears the burden of establishing two elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."[48]  The problem for Mulder is that he presents nothing more than speculation that a factual predicate for Claim 7(F) even exists.  He concedes that "the factual basis remains hidden by the State and can

---

[43] ECF No. 7 at 69–71.

[44] ECF No. 165 at 152–69.

[45] *Id*. at 166–68.

[46] ECF No. 183 at 42–53.

[47] 28 U.S.C.A. § 2244(d)(1)(D).

[48] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

11

now only be uncovered during the course of formal discovery authorized by this Court."[49] Because he points to no alleged fact that was not readily available when he filed his FAP and the claim does not relate back to that pleading, Claim 7(F) is time-barred.

### 10. *Claim 9—constitutional invalidity of sentence based on unreliable criminal-history evidence*

In Claim 9, Mulder alleges that his death sentence is invalid under various constitutional provisions "due to the State's presentation of unreliable evidence regarding Mulder's criminal history, its use of his juvenile convictions and other criminal conduct as non-statutory aggravating factors during the penalty phase, trial counsel's failure to object to most of this evidence, and the trial court's failure to prevent its unconstitutional admission."[50]  Respondents argue that two portions of this claim—9(A)(1) and 9(C)—do not relate back to Mulder's FAP.[51]

Claim 9(A)(1) is an IAC claim based on counsel's alleged failure to object to prejudicial testimony about Mulder's prior convictions.[52]  The testimony Mulder cites is that of Joe North, a police officer with the Phoenix Police Department, and Cliff Shugart, a retired police detective.[53] Respondents' arguments notwithstanding, this portion of Claim 9 relates back to Claim 3(V) and Claim 15 of Mulder's FAP.[54]

---

[49] ECF No. 183 at 52.

[50] ECF No. 165 at 181–90.

[51] ECF No. 199 at 19.

[52] ECF No. 165 at 182–83.

[53] *Id.*

[54] ECF No. 7 at 62–67, 148–51.

1   In Claim 9(C), Mulder alleges that the trial court erred "by permitting the admission of

2 irrelevant, inadmissible, and prejudicial evidence of criminal conduct."[55]  This claim focuses on

3 the testimony of Ron Rose, a detective with the Phoenix Police Department.  Over defense

4 counsel's objection, the trial court permitted Detective Rose to read from another officer's report

5 about a car theft and a report detailing Mulder's criminal history.[56]  This claim also relates back

6 to Claim 3(V).

7          ***11.    Claim 10—Eighth Amendment violation***

8   In Claim 10, Mulder alleges that execution by lethal injection violates the constitutional

9 prohibition against cruel and unusual punishment.[57]  This claim is comprised of several legal

10 theories.  The portions that respondents claim are untimely are a challenge to lethal injection

11 under Nevada's protocol (10(A)(2)), a challenge to lethal injection under Nevada's protocol as

12 applied to Mulder (10(A)(3)), a claim that a challenge to Nevada's lethal injection scheme is

13 cognizable in habeas (10(A)(4)), and a claim that Nevada's death-penalty scheme is

14 unconstitutional because executive clemency is unavailable (Claim 10(D)).

15          Respondents argue that Claim 10(A)(2) does not relate back because it challenges

16 Nevada's 2017 protocol, whereas the Mulder's FAP challenges the 2006 protocol.[58]  The

17 protocol targets are a distinction without a difference here because the two claims share a

18 common core of operative facts—i.e., concerns about the effects of the drugs to be used and the

19 lack of training of the execution team.[59]  Claim 10(A)(2) relates back.

20

---

21 [55] ECF No. 165 at 188–90.

[56] *Id*.

22 [57] *Id*. at 191–215.

23 [58] ECF No. 174 at 30.

[59] ECF No. 7 at 157–76; ECF No. 165 at 201–07.

Claim 10(A)(3), however, does not relate back.  In that claim, Mulder alleges that, due to physical impairment resulting from his 2001 stroke, lethal injection under Nevada's protocol would be cruel and unusual punishment as applied to him.  Mulder did not attempt to set out this claim or, more importantly, the facts supporting this claim, in his FAP.  For the same reason, Claim 10(D) does not relate back.

Claim 10(A)(4) is not a stand-alone habeas claim.  Instead, it is merely legal argument in support of Mulder's challenge to Nevada's lethal-injection scheme.[60]  Thus, respondents' argument is without merit as to that "claim."

In sum, claims 3(A), 3(C), 3(F)(1), 4, 7(F), and 10(A)(3) do not relate back to a timely petition and are therefore time-barred.  I now consider whether the remaining claims are properly exhausted to allow federal-court consideration.

**II.     Exhaustion**

**A.     Exhaustion requires the fair presentation of all claims to the state court.**

This court cannot grant habeas relief if the petitioner has not first exhausted state-court remedies.[61]  To satisfy the exhaustion requirement, a petitioner must "fairly present" his claims to the state's highest court.[62]  Fair presentation requires that a petitioner (1) identify the federal legal basis for his claims and (2) state the facts entitling him to relief on those claims.[63]  The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts

---

[60] ECF No. 165 at 201–07.

[61] 28 U.S.C. § 2254(b)(1)(A).

[62] *See e.g.*, *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).

[63] *See Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).

or where different facts are presented at the federal level to support the same theory.[64]  On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" will not render a claim unexhausted.[65]

The Supreme Court has recognized that if a state court remedy is no longer available for the petitioner, an unexhausted claim can be considered procedurally defaulted.[66]  The federal court can treat such a claim as technically exhausted but subject to the procedural-default doctrine.  "An unexhausted claim will be procedurally defaulted if state procedural rules would now bar the petitioner from bringing the claim in state court."[67]

**B.    Some of Mulder's claims are unexhausted.**

Respondents argue that Claims 2 through 14 are unexhausted in whole or in part.[68]  These claims were included in Mulder's second state habeas petition.[69]  Respondents' argument with respect to most, if not all, of these claims is that they include factual allegations that Mulder omitted from his appellate briefing to the Nevada Supreme Court.  They cite to *Baldwin v. Reese*[70] and *Castillo v. McFadden*[71] for the proposition that the district court may not "go beyond the appellate pleadings" to determine whether a claim has been fairly presented to the Nevada Supreme Court.[72]  Neither of those cases, however, conditions exhaustion on a petitioner

---

[64] *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988).

[65] *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994).

[66] *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

[67] *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014).

[68] ECF No. 174 at 31–51.

[69] ECF No. 175-7.

[70] *Baldwin v. Reese*, 541 U.S. 27 (2004).

[71] *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).

[72] ECF No. 199 at 20–21.

1 including all his factual allegations within the four corners of state-court appellate briefs.

2 Indeed, the issue in both cases was whether the petitioner had fairly presented the same federal

3 legal theory to the state's highest court.[73]  And here, Mulder did.

4        In his second state habeas proceeding, Mulder included in his opening brief to the

5 Nevada Supreme Court arguments as to the merits of each of the substantive claims he presented

6 to the state district court, citing in nearly every instance the same constitutional theories he

7 advances in this court.[74]  The Nevada Supreme Court presumably had before it a record of

8 Mulder's proceedings in the state district court, including a copy of the habeas petition providing

9 the factual allegations respondents fault Mulder for omitting on appeal.

10        Space limitations and effective briefing practice typically prevent a petitioner from

11 reciting in his appellate brief every factual allegation and piece of evidence presented to the

12 lower court.  "To exhaust the factual basis of [his federal] claim, the petitioner must only provide

13 the state court with the operative facts, that is, 'all of the facts necessary to give application to the

14 constitutional principle upon which [the petitioner] relies.'"[75]  Mulder's opening brief to the

15 Nevada Supreme Court in his second state habeas proceeding satisfied this requirement for

16 nearly all the claims that the respondents cite as unexhausted.

17        Both parties also agree that any claim that Mulder failed to exhaust in his second state

18 habeas proceeding or earlier would be procedurally barred from state-court review.[76]  While

19 Mulder does not concede that such claims are necessarily subject to the federal procedural-

20

---

21 [73] *See Baldwin*, 541 U.S. at 30; *Castillo*, 399 F.3d at 1000.

22 [74] ECF No. 176-23 at 84–223.

23 [75] *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)).

[76] ECF No. 174 at 51, ECF No. 183 at 78–80.

1  default doctrine, he provides no convincing argument why I should conclude otherwise.  Thus, I

2  consider any claim not yet presented to the Nevada courts to be technically exhausted but subject

3  to the procedural-default doctrine.[77]

4       Although all of Mulder's claims are either exhausted or technically exhausted (but

5  subject to the procedural default-doctrine), any claim exhausted before the second state habeas

6  proceeding is not subject to the procedural-default doctrine.  Thus, I still need to address

7  Mulder's arguments that some of the claims that respondents cite as unexhausted were actually

8  exhausted in his direct appeal or his first state habeas proceeding.

9       ***1.    Claim 2 is unexhausted.***

10       Mulder contends that he "arguably presented" in his first state habeas proceeding Claim

11  2,[78] in which he alleges that he is "categorically exempt" from the death penalty due to "his

12  dementia, aphasia, paralysis, and personality change as a result of a stroke."[79]  Mulder included a

13  brief statement in his opening brief in his first state habeas proceeding that it would be cruel and

14  unusual punishment to execute him after his stroke given that he "now exhibits several of the

15  criteria that would find him mentally retarded."[80]  Although he expanded on this claim in his

16  reply brief,[81] his presentation to the Nevada Supreme Court lacks the same legal theories and

17  operative facts supporting Claim 2.  And, as respondents point out, Mulder's argument to this

18  court in support of an exhaustion stay included an assertion that, in his first state habeas

19  proceeding, "post-conviction counsel did not raise a claim that a person like Mr. Mulder whose

20

---

21  [77] *See Dickens*, 740 F.3d at 1317.

  [78] ECF No. 183 at 63–65.

22  [79] ECF No. 165 at 22–48.

23  [80] ECF No. 137-14 at 5.

  [81] ECF No. 137-19 at 10–11.

present level of functioning falls within the range of a person with mental retardation should also be categorically excluded from execution under the Eighth Amendment."[82]  Therefore, I conclude that Claim 2 was not exhausted prior to Mulder's second state habeas proceeding.

### 2. Claim 12 is exhausted only as to the IAC theory based on failure to challenge the trial court's instruction on premeditation and deliberation.

Mulder also argues that he exhausted in his first state habeas proceeding[83] Claim 12, in which he alleges he was deprived of effective assistance of appellate counsel because his counsel on appeal failed to raise the claims he raised throughout his SAP.[84]  The only ineffective-assistance-of-appellate-counsel claim that Mulder presented in his first state habeas proceeding was a claim that counsel on appeal was ineffective by not challenging the trial court's instruction on premeditation and deliberation.[85]  Thus, Claim 12 is exhausted only as to that particular claim.[86]

### 3. Claims 5, 7(D–E), 9, and 11(B) are unexhausted.

Relying on *Beam v. Paskett*,[87] Mulder argues that Claims 5, 7(D–E), 9, and 11(B) were exhausted on direct appeal by virtue of the Nevada Supreme Court's mandatory review of death sentences under NRS § 177.055.[88]  That statute requires the state supreme court to consider

---

[82] ECF No. 117 at 22.

[83] ECF No. 183 at 68–69.

[84] ECF No. 165 at 224.

[85] ECF No. 137-14 at 19–20.

[86] *See Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005) (holding that a petitioner does exhaust unrelated alleged instances of counsel's ineffectiveness by presenting any ineffective assistance of counsel claim in the state court).

[87] *Beam v. Paskett*, 3 F.3d 1301 (9th Cir. 1993), *overruled on other grounds in Lambright v. Stewart*, 191 F.3d 1181 (9th Cir. 1999).

[88] ECF No. 183 at 70–75.

whether the evidence supported the finding of the aggravating circumstances; whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and whether the death sentence was excessive.  In *Beam*, the habeas claim under consideration was "whether the sentencing judge's application of the 'continuing threat' aggravating factor—that the defendant 'has exhibited a propensity to commit murder which will probably constitute a continuing threat to society'—was unconstitutional."[89]  The Ninth Circuit held that the claim was impliedly exhausted under the Idaho Supreme Court's automatic statutory review of the question whether a death penalty was "imposed under the influence of passion, prejudice, or any other arbitrary factor."[90]

I can find only two Ninth Circuit cases that have followed *Beam*'s implied-exhaustion holding.[91]  Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to apply federal-law standards in conducting its review under NRS § 177.055.[92]  In addition, Mulder has not shown that any of these claims were "clearly encompassed" within Nevada's mandatory review and "readily apparent from the record."[93]  Thus, Claims 5, 7(D–E), 9, and 11(B) were not exhausted on direct appeal by operation of the mandatory-review statute.

---

[89] *Beam*, 3 F.3d at 1305.

[90] *Id*. at 1305–07.

[91] *See Comer v. Schriro*, 463 F.3d 934, 954–56 (9th Cir. 2006), *rev'd en banc in part on other grounds*, 480 F.3d 960 (9th Cir. 2007); *Hoffman v. Arave*, 236 F.3d 523, 536 (9th Cir. 2001).

[92] *Sechrest v. Ignacio*, 943 F. Supp. 1245, 1250 (D. Nev. 1996).

[93] *See Comer*, 463 F.3d at 956.

1

2

        **4.**     ***Exhaustion is excused for Claim 6 and the Nevada's-lethal-injection-protocol-is-unconstitutional portion of Claim 10, but not for the rest of Claim 10 or any of Claim 13.***

3         Finally, Mulder contends that he should be excused from exhausting Claims 6, 10, and 13

4 because presentation of those claims to the Nevada courts would be futile.[94]  Claim 6 challenges

5 the Nevada Supreme Court's determination in his first state habeas action that the trial court's

6 use of an improper premeditation instruction constituted harmless error.[95]  Mulder could not

7 have raised this claim in his first habeas action because the factual and legal basis for it did not

8 yet exist.  He did, however, present it to the Nevada Supreme Court in his second habeas

9 action.[96]  The Nevada Supreme Court dismissed the claim on procedural grounds without

10 recognizing its unique procedural posture.[97]  In fact, the court erroneously characterized the

11 claim as one that was available when he filed his first petition.[98]  Given these circumstances, I

12 find that Mulder is excused from the exhaustion requirement for Claim 6.

13         As for Claims 10 and 13, Mulder argues for each that exhaustion is futile because the

14 Nevada Supreme Court "regularly rejects" such claims.[99]  That argument alone is not sufficient

15 to excuse exhaustion,[100] but the Nevada Supreme Court has maintained that challenges to

16

17

---

18  [94] ECF No. 183 at 76–78.

19  [95] The ruling is located at ECF No. 137-22 on pages 21–23.

    [96] ECF No. 176-23 at 157–58.

20  [97] ECF No. 176-32.

21  [98] *Id*. at 5.

    [99] ECF No. 183 at 77–78.

22  [100] *See Engle v. Isaac*, 456 U.S. 107, 130 (1982) (holding that a defendant "may not bypass the
23 state courts simply because he thinks they will be unsympathetic to the claim," and "[e]ven a
state court that has previously rejected a constitutional argument may decide, upon reflection,
that the contention is valid").

Nevada's lethal-injection protocol are not cognizable as a post-conviction claim.[101]  So, the state court has gone beyond rejecting the argument and, instead, has refused to even entertain it. Thus, to the extent that it is premised on the unconstitutionality of Nevada's lethal-injection protocol, Claim 10 falls within the statutory exception to exhaustion,[102] and Mulder is excused from exhausting that aspect of Claim 10.  The remainder of Claims 10 and 13, however, fall under the holding in *Engle v. Isaac*, precluding a petitioner from "bypass[ing] the state courts simply because he thinks they will be unsympathetic to the claim,"[103] so exhaustion is not excused as to those claims.

## III. Procedural Default

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state-law ground that is independent of the federal question and adequate to support the judgment.[104]  The United States Supreme Court in *Coleman v. Thompson* described the effect of a procedural default:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[105]

---

[101] *See Rippo v. State*, 423 P.3d 1084, 1112 n.33 (Nev. 2018); *McConnell v. State*, 212 P.3d 307, 310–11 (Nev. 2009).

[102] *See* 28 U.S.C. § 2254(b)(1)(B) (excusing exhaustion when "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant").

[103] *Engle*, 456 U.S. at 130.

[104] *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

[105] *Id.* at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

**A.    Independent and adequate state procedural rules**

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision.[106]  A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law.[107]  If the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar.[108]

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default."[109]  A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed."[110]  Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies," given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule."[111]

In *Bennett v. Mueller*, the Ninth Circuit announced a burden-shifting test for analyzing adequacy. [112]  Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense."[113]

---

[106] *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).

[107] *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

[108] *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

[109] *Calderon v. U. S. Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted).

[110] *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).

[111] *Walker v. Martin*, 562 U.S. 307, 320 (2011).

[112] *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003).

[113] *Id*. at 586.

22

1    The burden then shifts to the petitioner "to place that defense in issue" "by asserting specific

2    factual allegations that demonstrate the inadequacy of the state procedure, including citation to

3    authority demonstrating inconsistent application of the rule."[114]  Assuming the petitioner has met

4    his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State,

5    which must demonstrate "that the state procedural rule has been regularly and consistently

6    applied in habeas actions."[115]

7         If, however, the Ninth Circuit has "already made a determination regarding the adequacy

8    of the state procedural rule, the petitioner's method of placing the defense in issue must be

9    modified."[116]  If the appellate court found the state procedural rule to be consistently applied, the

10   petitioner must cite cases demonstrating subsequent inconsistent application.[117]  If not,

11   "petitioners may fulfill their burden under *Bennett* by simply challenging the adequacy of the

12   procedure."[118]

13        **B.      Demonstrating cause for a procedural default**

14        To demonstrate cause for a procedural default, the petitioner must "show that some

15   objective factor external to the defense impeded" his efforts to comply with the state procedural

16   rule.[119]  For cause to exist, the external impediment must have prevented the petitioner from

17   raising the claim.[120]  With respect to the prejudice prong, the petitioner bears "the burden of

18

19   _____

[114] *Id.*

20   [115] *Id.*

21   [116] *King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006).

     [117] *See id.*

22   [118] *Id.*

23   [119] *Murray*, 477 U.S. at 488.

     [120] *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

1  showing not merely that the errors [complained of] constituted a possibility of prejudice, but that

2  they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with

3  errors of constitutional dimension."[121]

4      **C.    Actual innocence**

5        Finally, a petitioner can overcome the procedural default of a claim or a statute of

6  limitations bar of a claim by showing that he is actually innocent.[122]  To demonstrate actual

7  innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific

8  evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented

9  at trial."[123]  To establish actual innocence for the death penalty, he "must show by clear and

10  convincing evidence that, but for a constitutional error, no reasonable juror would have found

11  [him] eligible for the death penalty under the applicable state law."[124]

12      **D.    Many of Mulder's claims are procedurally defaulted.**

13        Respondents argue that Claims 2 through 14 are procedurally defaulted, in whole or in

14  part.[125]  First, they assert that the Nevada Supreme Court denied a few claims in Mulder's first

15  state habeas corpus proceeding because he failed to present them on direct appeal as required by

16  NRS § 34.810(1)(2), resulting in Claims 6, 7 (in part), and 10 being defaulted.  Next, respondents

17  assert that the Nevada Supreme Court denied the claims presented in his second state petition as

18

19  ───────────────────────────

20  [121] *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

21  [122] *See Schlup v. Delo*, 513 U.S. 298 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (application to limitations bar); *Sawyer v. Whitley*, 505 U.S. 333, 345 (1992) (actual innocence with respect to death penalty).

22  [123] *Schlup*, 513 U.S. at 324.

23  [124] *Sawyer*, 505 U.S. at 336.

[125] ECF No. 174 at 51–53.

1  untimely under NRS § 34.726, successive under to NRS § 34.810(1)(b) and (2), and barred by

2  laches under NRS § 34.800, resulting in Claims 2, 3 (in part), 4, 5 (in part), 6 (in part), 7 (in

3  part), 8, 9, 10, 11 (in part), 12, 13, and 14 (in part) being defaulted.

4  ### *1.    NRS § 34.726 was an adequate procedural bar.*

5  Mulder does not contest the adequacy of  NRS § 34.810 as a procedural bar, so I

6  conclude that NRS § 34.810 is adequate to support application of the procedural-default doctrine

7  in this case.  The Ninth Circuit has affirmed the adequacy of the laches bar under NRS § 34.800,

8  but it noted in *Ybarra v. McDaniel* that "a petitioner can show that a rule deemed adequate in one

9  case is inadequate as to his case because it was not consistently or regularly applied at the time of

10 his particular default." [126]  The rule expressly requires the State to plead the laches defense,

11 however, so Mulder must show that "the Nevada court has declined to apply the rule even when

12 the State so pleads."[127]  This he has not done.

13 Mulder's default under § 34.800 occurred in 2005, five years after the Nevada Supreme

14 Court's denial of his direct appeal.  *Ybarra* recognized the adequacy of the rule as of 1992.[128]

15 Mulder cites to numerous capital cases and one non-capital case in which he claims the Nevada

16 Supreme Court "ignored" the State's assertion of laches as a defense.[129]  In none of those cases,

17 however, does it appear that the Nevada Supreme Court opted to consider the petitioner's claims

18 on their merits notwithstanding the existence of a meritorious laches defense.[130]  Rather, in most,

---

[126] *Ybarra v. McDaniel*, 656 F.3d 984, 990 (9th Cir. 2011).

[127] *Id.* at n.2.

[128] *See id.* at 990.

[129] ECF No. 183 at 85–86.

[130] *See Greene v. State*, 2016 WL 3524623, at *1 (Nev. 2016); *Canape v. State*, 2016 WL 2957130, at *3 (Nev. 2016); *Lisle v. State*, 351 P.3d 725 (Nev. 2015); *Hernandez v. McDaniel*, 2014 WL 4804040, at *1 (Nev. 2014); *State v. Rhyne*, 2014 WL 502548, at *1 (Nev. 2014); *Blake v. McDaniel*, 2014 WL 3784125, at *4 (Nev. 2014); *Castillo v. State*, 2013 WL 3833276,

1  if not all, of the cases, the court found the claims barred under one or more of Nevada's other

2  procedural rules.  Because these cases do not show that the Nevada Supreme Court was

3  affirmatively declining to apply the laches rule, they do not establish that the rule was not

4  consistently or regularly applied at the time of Mulder's default.[131]  The same goes for the

5  handful of cases Mulder cites in which the Nevada Supreme Court expressly chose not to address

6  laches and focused instead on other procedural bars.[132]

7         Mulder's additional arguments do not place the adequacy of the rule at issue.  He cites to

8  ambiguity in Nevada case law as to whether the bar is discretionary or mandatory, but that does

9  not undermine a finding that the bar is "firmly established" and "regularly followed."[133]

10 Likewise, his arguments asserting inconsistencies in the Nevada Supreme Court's holdings on

11 what must be shown to overcome the bar also fall short.[134]

12        As for NRS § 34.726, the Ninth Circuit Court has repeatedly rejected arguments that the

13 Nevada Supreme Court has inconsistently applied the bar and has held the bar to be adequate to

14 support application of the procedural-default doctrine.[135]  Even so, Mulder contends that

15 _____

16 at *1 (Nev. 2013); *Rosas v. McDaniel*, No. 57698, 2012 WL 2196321, at *2 (Nev. June 14, 2012); *McNelton v. State*, No. 54925, 2012 WL 1900106, at *2 (Nev. May 23, 2012); *Hogan v.*

17 *State*, No. 54011, 2012 WL 204641, at *2 (Nev. Jan. 20, 2012); *Leonard (Gregory) v. State*, No. 51607, 2011 WL 5009403, at *2 (Nev. Oct. 18, 2011); *Bollinger v. State*, 2011 WL 4389652, at

18 *1 (Nev. 2011); *Sonner v. Warden*, 373 P.3d 962 (Nev. 2011); and *Rogers v. State*, ECF No. 184-11.

19 [131] *See Johnson v. Lee*, 136 S. Ct. 1802, 1806 (2016) (failure to cite applicable procedural rule does not "reflect state-court inconsistency").

20 [132] ECF No. 183 at 85 (citing *Weber v. State*, 2016 WL 3524627, at *3 n.1 (Nev. 2016); *Rippo v. State*, 368 P.3d 729, 736 (2016); and *Pellegrini v. State*, 34 P.3d 519, 524 n. 5 (Nev. 2001)).

21 [133] *See Kindler*, 558 U.S.at 60–61.

22 [134] *See Martin*, 562 U.S. at 320 (emphasizing that uncertainty in application is not enough to disqualify a ground as adequate to bar federal review).

23 [135] *See Williams v. Filson*, 908 F.3d 546, 579–80 (9th Cir. 2018); *Loveland v. Hatcher*, 231 F.3d 640, 642–63 (9th Cir. 2000); *Moran v. McDaniel*, 80 F.3d 1261, 1269–70 (9th Cir. 1996).

§ 34.726 is an inadequate bar because, at the time of his default, the Nevada Supreme Court had yet to pin down how it applied to successive petitions alleging ineffective assistance of initial post-conviction counsel as cause for the default.[136]  The Ninth Circuit's decision in *Williams v. Filson* undermines this argument.  In *Williams*, the Ninth Circuit recognized that, "[i]n 2001, the Nevada Supreme Court held [in *Pellegrini v. State*] for the first time that § 34.726 applies to petitioners who had already filed a petition for post-conviction relief prior to § 34.726's effective date" and "that petitioners seeking to file timely successive petitions had one year from § 34.726's effective date, [January 1, 1993], in which to do so."[137]  The court held that even though *Pellegrini* did not notify Williams of the rule until long after his 1994 deadline had passed, § 34.726 was adequate to bar his federal court claims because Williams waited fifteen months after *Pellegrini* to file his successive state petition.[138]  Mulder filed his successive state petition thirteen years after *Pellegrini*.

Mulder argues that the Nevada Supreme Court's holding in *Crump v. Warden*[139] excuses his procedural default.  In *Crump*, the Nevada Supreme Court held that, in a case in which a petitioner is entitled to the appointment of post-conviction counsel under a statutory mandate, ineffective assistance by that counsel may provide good cause under NRS § 34.810(1)(b) for the failure to present claims for relief in a prior post-conviction petition for a writ of habeas corpus.[140]  Mulder contends that the Nevada Supreme Court did not establish a firm deadline to file a successive petition asserting ineffective assistance of post-conviction counsel as cause until

---

[136] ECF No. 183 at 95–101.

[137] *Williams*, 908 F.3d at 578 (citing to *Pellegrini v. State*, 34 P.3d 519 (Nev. 2001)).

[138] *Id.*

[139] *Crump v. Warden*, 934 P.2d 247 (Nev. 1997).

[140] *Id.* at 254.

27

1  fifteen years after he filed his first state habeas petition.  This, he claims, was not accomplished

2  until the Nevada Supreme Court's decision in *Rippo v. State*,[141] which set the deadline at one

3  year from the conclusion of post-conviction proceedings in which the ineffective assistance

4  allegedly occurred.[142]

5         Mulder's characterization of *Rippo* is right, but it ignores the fact that thirteen years

6  earlier, the Nevada Supreme Court had established in *Hathaway v. State* that an IAC claim

7  asserted as cause to excuse a procedural default must not itself by procedurally barred.[143]

8  *Hathaway* further established that, to avoid default, such a claim must be filed within "a

9  reasonable time" after the basis for the claim becomes available.[144]  But Mulder waited five

10  years after the conclusion of his first state habeas proceeding to file his second, and he offers no

11  justification for assuming the Nevada courts would consider five years to be a reasonable time.

12         In sum, Mulder's arguments do not place the adequacy of NRS § 34.726 at issue so as to

13  shift the burden to the respondents.  I thus conclude that the provision was a clear, consistently

14  applied, and well-established procedural rule at the time of Mulder's defaults.

15                    *2.      Claim 7(F) is not procedurally defaulted*

16         Mulder argues that he did not default his federal claims under an independent state

17  procedural rule because the Nevada Supreme Court's application of  NRS § 34.726 and NRS

18  § 34.810 was interwoven with federal law.[145]  He contends that both rules have a cause-and-

19  prejudice exception that requires the state court to consider the underlying merits of the federal-

20

21  _____
   [141] *Rippo v. State*, 368 P.3d 729 (Nev. 2016).

   [142] *Id.* at 739, *vacated on other grounds by Rippo v. Baker*, 137 S. Ct. 905 (2017).

22  [143] *See Hathaway v. State*, 71 P.3d 503, 506 (Nev. 2003).

23  [144] *Id.* at 507–08; *see also Rippo*, 368 P.3d at 738 (discussing *Hathaway*).

   [145] ECF No. 183 at 101–05.

                                        28

1  law claim and that certain claims were dismissed only after the Nevada Supreme Court

2  conducted a federal analysis of their merits.  This contention is without merit,[146] with the lone

3  exception of Claim 7(F).

4      In *Cooper v. Neven*,[147] the Ninth Circuit concluded that the application of Nevada's

5  timeliness and successiveness bars to petitioner's *Brady*[148] claims was not "independent"

6  because "the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling

7  the outcome of its state procedural default analysis."[149]  The court reasoned that, "[u]nlike other

8  cases, where discussion of the merits of a claim occurs simply to determine whether the claim

9  could have been raised earlier, here the claim is itself the justification for the default."[150]  In

10 Mulder's second state habeas proceeding, the Nevada Supreme Court relied on a *Brady* analysis

11 to determine that he could not establish cause for the default of his claims that "the State failed to

12 disclose evidence concerning the caseloads of each defense attorney working on Mulder's case,

13 provide audio or video recordings or a transcript of a witness's statement to police, and surrender

14 documents related to the prosecutor's conversation with the same witness."[151]  For the latter two,

15 the court was addressing Mulder's claim involving Kimberly Van Heusen (Claim 7(F)) and

16 concluded that the State did not withhold *Brady* evidence.  Based on *Cooper*, I conclude that

17 Claim 7(F) is not procedurally defaulted, but the remainder of Mulder's claims presented for the

18

---

19 [146] *See Moran*, 80 F.3d at 1269 (holding Nevada procedural rules independent where the court
20 only discussed the merits of the claim "strictly for the purpose of demonstrating that [Moran]
   cannot overcome his procedural defaults by a showing of cause and prejudice").

21 [147] *Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011).

   [148] *Brady v. Maryland*, 373 U.S. 83 (1963).
22
   [149] *Cooper*, 641 F.3d at 332.

23 [150] *Id*. at 333.

   [151] ECF No. 176-32 at 12–13.

1  first time in his second state habeas proceeding are, and I am barred from reviewing them absent

2  a showing of cause and prejudice or a fundamental miscarriage of justice.

3

   ### 3.     *It remains to be seen whether Mulder can show cause and prejudice for defaulted trial IAC claims.*

4

5       For some of his claims, Mulder asserts he can establish good cause and prejudice to

6  overcome his procedural default.[152]  For his trial IAC claims, he argues that the claims were

7  defaulted because he was not provided effective assistance of counsel in his first state habeas

8  proceeding.  In *Martinez v. Ryan*, the Supreme Court ruled that ineffective assistance of post-

9  conviction counsel may serve as cause to overcome the procedural default of a claim of

10  ineffective assistance of trial counsel.[153]  The High Court noted that it had previously held that

11  "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a

12  procedural default,[154] and it qualified that prior holding "by recognizing a narrow exception:

13  inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a

14  prisoner's procedural default of a claim of ineffective assistance at trial."[155]  The Court defined

15  "initial-review collateral proceedings" as "collateral proceedings [that] provide the first occasion

16  to raise a claim of ineffective assistance at trial."[156]

17       A petitioner makes the necessary showing under *Martinez* when he demonstrates that "(1)

18  post-conviction counsel performed deficiently; (2) 'there was a reasonable probability that,

19  absent the deficient performance, the result of the post-conviction proceedings would have been

20

21  ────────────

   [152] ECF No. 183 at 105–46.

22  [153] *Martinez v. Ryan*, 566 U.S. 1 (2012).

   [154] *Martinez*, 566 U.S. at 15.

23  [155] *Id*. at 9.

   [156] *Id*. at 8.

1    different'; and (3) the 'underlying ineffective-assistance-of-trial-counsel claim is a substantial

2    one.'"[157]  A claim is substantial if it has "some merit."[158]  Whether Mulder can meet this

3    standard for any of his defaulted trial IAC claims depends on the underlying merits of the claim,

4    which I cannot determine at this stage.  So I reserve judgment on the issue until the merits of the

5    claims have been fully briefed.

6            Mulder also contends that mental impairments caused by his stroke in 2001 provide

7    additional cause to excuse his procedural defaults.  These impairments, he alleges, prevented him

8    from providing his first habeas counsel the information supporting the trial IAC claims in Claim

9    3.  Mulder does not specify what particular information he was unable to communicate or

10   explain how his second state habeas counsel was able to obtain the information.  Regardless,

11   Ninth Circuit precedent limits the possibility that a petitioner's mental condition can serve as

12   cause for procedural default to cases in which the petitioner has no assistance, and his condition

13   prevents him from applying for relief at all.[159]  Those circumstances are not present here.

14           For Claim 4,[160] Mulder argues that he can establish cause and prejudice based on

15   *Strickler v. Greene*, in which the Supreme Court held that the State's suppression of material

16   exculpatory impeachment evidence under *Brady* may constitute cause and prejudice to excuse a

17   procedural default.[161]  The evidence supporting Claim 4 about the conditions Mulder is subject

18   to as a capital inmate is plainly not *Brady* evidence.  Thus, with the possible exception of

19

20   [157] *Dickinson v. Shinn*, 2 F.4th 851, 858 (9th Cir. 2021) (quoting *Ramirez v. Ryan*, 937 F.3d 1230, 1242 (9th Cir. 2019)).

21   [158] *Id*. (quoting *Martinez*, 566 U.S. at 14).

22   [159] *See Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012).

23   [160] He also makes this argument for Claim 7(F), but I disregard it as moot because I concluded *supra* that Claim 7(F) is not procedurally defaulted.

     [161] *Strickler v. Greene*, 527 U.S. 263, 282 (1999).

Mulder's trial IAC claims, I conclude that he has not demonstrated cause and prejudice sufficient to overcome his procedural defaults.

### 4.    Mulder has not established that his procedural default can be excused based on actual innocence.

Mulder argues that he can overcome the procedural default of any of his claims by showing that he is actually innocent with respect to imposition of the death penalty because he "is categorically excluded from the death penalty under *Hall v. Florida*."[162]  *Hall*, however, is based on the notion that executing an intellectually disabled person constitutes cruel and unusual punishment in violation of the Eighth Amendment.[163]  Whether Mulder can claim the benefits of *Hall* is separate from whether he is actually innocent of the death penalty.[164]  The stroke that caused his mental impairments occurred years after the jury sentenced him to death.  Without a showing that, but for a constitutional error, no reasonable juror would have found him eligible for the death penalty under Nevada law, Mulder's procedural defaults cannot be excused based on actual innocence.

## IV.    Claims 4, 10(A)(2), and those regarding ineffective assistance of post-conviction counsel are not cognizable as federal habeas claims.

Finally, respondents argue that Claims 4, 10(A)(2), and Mulder's claims regarding ineffective assistance of post-conviction counsel are not cognizable as federal habeas claims.[165]  In Claim 4, Mulder alleges that the State is violating his constitutional rights by classifying him as a capital inmate, which contributes to the prison's failure to adequately care for his medical

---

[162] ECF No. 183 at 152–53.

[163] *Hall v. Florida*, 572 U.S. 701, 708 (2014).

[164] *See Sawyer*, 505 U.S. at 345 (actual innocence with respect to death penalty).

[165] ECF No. 174 at 53–55.

needs.[166]   A civil-rights action under 42 U.S.C. § 1983 action "is a proper remedy for a state

prisoner who is making a constitutional challenge to the conditions of his prison life, but not to

the fact or length of his custody,"[167] and habeas corpus and § 1983 are mutually exclusive

remedies.[168]  Claim 4 thus is not cognizable as a federal habeas claim.  Respondents are also

correct that any claims of ineffective assistance of post-conviction counsel must be dismissed as

not cognizable in this proceeding because the Due Process Clause does not require the State to

provide a post-conviction lawyer.[169]

        Respondents argue that Mulder's challenge of Nevada's 2017 execution protocol in

Claim 10(A)(2) is both not cognizable as a habeas claim and not ripe.  Relying on Supreme

Court and Ninth Circuit case law, they argue that challenges to a specific protocol must be

brought under § 1983 and are not cognizable in a habeas proceeding.[170]  Their ripeness argument

is premised on the contention that the protocol to be applied to Mulder will not be known until

the state court has issued a warrant of execution and the execution date is set.  As to the latter

argument, Mulder contends the proper inquiry is not whether an execution date is scheduled, but

instead whether there is an established protocol in place,[171] and that protocol has changed at least

twice since he filed his SAP and once since he made this argument.[172]  Thus, I find that the

challenge to the execution protocol in Claim 10(A)(2) is not ripe because it is impossible at this

---

[166] ECF No. 165 at 126–44.

[167] *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973).

[168] *Nettles v. Grounds*, 830 F.3d. 922 (9th Cir. 2016).

[169] *See* 28 U.S.C. § 2254(i); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

[170]ECF No. 174 at 54–55 (citing *Hill v. McDonough*, 547 U.S. 573 (2006); *Nelson v. Campbell*, 541 U.S. 637 (2004); *Beardslee v. Woodford*, 395 F.3d 1064 (9th Cir. 2005)).

[171] ECF No. 183.

[172] *See* ECF No. 184-1; *Floyd v. Daniels*, 3:21-cv-00176-RFB-CLB, ECF No. 93-1 (D. Nev.).

1   time to know what Nevada's lethal-execution protocol will be when Mulder's execution becomes

2   imminent.[173]

3   **V.   Summary of dismissed claims**

4           To summarize, Claims 2, 3(A), 3(C), 3(F)(1), 4, 5, and 7–14 are dismissed, except for the

5   trial IAC claims embedded in Claims 5, 8, and 9 and the appellate IAC claim in Claim 12 that is

6   premised on counsel's failure to challenge the trial court's instruction on premeditation and

7   deliberation.  I discourage either party from filing motions seeking reconsideration or

8   clarification of these determinations.  If this summary is inconsistent with my analysis or

9   findings above,  I prefer that the parties raise such issues in their forthcoming pleadings that are

10  scheduled in my May 2, 2019, order.[174]

11  **VI.   Mulder's motion for leave to conduct discovery [ECF No. 185]**

12          By his motion for leave to conduct discovery, Mulder requests permission to conduct

13  discovery to support his *Martinez* arguments and the merits of his trial IAC claims in Claim 3

14  and to support the merits of Claims 4, 7(F), and 10.[175]  Good cause for discovery in a habeas

15  proceeding exists "where specific allegations before the court show reason to believe that the

16  petitioner may, if the facts are developed, be able to demonstrate that he is . . . entitled to

17

18  [173] *See Floyd v. Filson*, 949 F.3d 1128, 1152–53 (9th Cir. 2020) ("We cannot determine what
    drugs Nevada might attempt to use to execute Floyd, and we cannot adjudicate the
19  constitutionality of an unknown protocol."); *see also Beardslee v. Woodford*, 395 F.3d 1064,
    1069–70 (9th Cir. 2005) ("[T]he precise execution protocol is subject to alteration until the time
20  of execution."); *see also Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580 (1985)
    (Ripeness is "peculiarly a question of timing;" its "basic rationale is to prevent the courts,
21  through premature adjudication, from entangling themselves in abstract disagreements." (internal
    quotation marks and citations removed)).  Having so concluded, I decline to address whether
22  Mulder must seek relief under § 1983 rather than by way of a habeas proceeding.  *See Payton v.
    Cullen*, 658 F.3d 890, 893 n.2 (9th Cir. 2011).

23  [174] ECF No. 162.

    [175] ECF No. 185.

1  relief."[176]   However, "courts should not allow [habeas petitioners] to use . . . discovery for

2  fishing expeditions to investigate mere speculation."[177]  "To obtain discovery . . . a defendant

3  must make a prima facie showing of materiality.  Neither a general description of the information

4  sought nor conclusory allegations of materiality suffice; a defendant must present facts which

5  would tend to show that the Government is in possession of information helpful to the

6  defense."[178]

7       Because I dismissed Claim 4 and the portions of Claim 10 for which Mulder seeks

8  discovery (i.e., Claim 10(A)(2–3)), I deny his request for discovery as moot.  Given my decision

9  to defer the *Martinez* issues until I rule on the merits, I deny without prejudice Mulder's request

10  with respect to Claim 3.  He may file a new motion for leave to conduct discovery, if factually

11  and legally justified, in conjunction with his reply to respondents' answer, as contemplated in the

12  scheduling order entered May 2, 2019.[179]

13       I also deny his request for discovery on Claim 7(F).  In this claim, Mulder alleges that the

14  State has failed to disclose material exculpatory and impeachment evidence concerning

15  Kimberly Van Heusen.  He points to the fact that Van Heusen's initial statement to the police

16  exculpated him, but that a week later, just prior to providing grand-jury testimony, she changed

17  her story to incriminate him.[180]  On cross-examination at trial, Van Heusen testified that the

18

19

---

20  [176] *Bracy v. Gramley*, 520 U.S. 899, 908–909 (1997) (alteration in original) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

21  [177] *Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal. (Nicolaus)*, 98 F.3d 1102, 1106 (9th Cir. 1996).

22  [178] *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citations omitted).

23  [179] ECF No. 162.

[180] ECF No. 165 at 166–68.

1  change was prompted by a jail visit from her sister the night before her grand-jury testimony.[181]

2  Claim 7(F) and Mulder's discovery request are premised on the assertion that the State possesses

3  and is withholding evidence about what motivated Van Heusen to change her story, but Mulder

4  offers little more than speculation that such *Brady* material exists.  So even if Claim 7(F) were

5  not time-barred, I would deny Mulder's discovery request.[182]

6  **VII.    Mulder's motion for an evidentiary hearing [ECF No. 187]**

7          Mulder asks for an evidentiary hearing to assist him in establishing cause and prejudice

8  under *Martinez* and to prove the evidence supporting Claims 4 and 7(F).[183]  As with his

9  discovery motion, I deny this request without prejudice on the *Martinez* issues, and Mulder may

10  renew his motion in conjunction with his reply to respondents' answer, as contemplated in the

11  May 2, 2019, scheduling order.  The request is denied as moot as to Claims 4 and 7(F) because

12  those claims have been dismissed.

13                                            **Conclusion**

14          IT IS THEREFORE ORDERED that respondents' motion to dismiss **[ECF No. 174] is**

15  **Granted in Part and Denied in Part:**

16          •    The following claims in petitioner's second-amended habeas petition are

17                dismissed: Claims 2, 3(A), 3(C), 3(F)(1), 4, 5, and 7–14, except for the trial IAC

18                claims embedded in Claims 5, 8, and 9 and the appellate IAC claim in Claim 12

19                premised on counsel's failure to challenge the trial court's instruction on

20                premeditation and deliberation;

---

[181] ECF No. 131-8 at 65–67.

[182] *See United States v. Lucas*, 841 F.3d 796, 809 (9th Cir. 2016) (petitioner "must do more than speculate that *Brady* material exists" to support his discovery request).

[183] ECF No. 187.

- In all other respects, the motion to dismiss is denied.

IT IS FURTHER ORDERED that petitioner's motions for leave to conduct discovery and for an evidentiary hearing **[ECF Nos. 185 and 187] are DENIED.**

IT IS FURTHER ORDERED that respondents have until January 27, 2022, to file an answer responding to the remaining claims in petitioner's second-amended petition for writ of habeas corpus (ECF No. 165).  In all other respects, the schedule set forth in my May 2, 2019, order (ECF No. 162) remains in effect.

Dated: September 30, 2021

_____
U.S. District Judge Jennifer A. Dorsey